## VIN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

VALDEZ LAMONT JORDAN,

      Plaintiff,

v.

DEANNA BROOKHART, JEREMIAH
BROWN, DAVID VAUGHN, and JERMY
KOHN,

      Defendants.

Case No. 23-cv-2654-RJD

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Valdez Lamont Jordan, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. Jordan alleges that Defendants denied him a vegetarian kosher diet in violation of the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.*

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Jordan makes the following allegations: Jordan is a Messianic Hebrew Israelite and as of 2020 began the practice of a Perushim which requires that he maintain vegetarian and kosher (Doc. 1, p. 4). On December 27, 2020, Jordan sent Chaplain David Vaughn an offender request for religious diet form and a religious affiliation sincerity assessment form, requesting a vegetarian kosher diet as part of his religion and special meals for holidays/feasts (*Id*. at p. 5). Vaughn returned the forms and instructed Jordan that separate forms were used for holiday requests. He also informed Jordan that the prison offered kosher, lacto-ovo, and vegan religious diets (*Id*.). Jordan again requested a vegetarian kosher diet (*Id*.).

Jordan did not receive his requested diet. On May 17, 2021, he sent Vaughn an inquiry into the status of his religious diet (*Id*.). Vaughn responded that there were no vegetarian kosher diets offered at the prison and instructed Jordan to resubmit his request (*Id*.). Jordan resubmitted the forms, again noting that he was a practicing vegetarian (*Id*.). He noted that the kosher diet provided by the prison contained meat and poultry, which prohibited him from practicing his vegetarian kosher religious diet (*Id*.). Vaughn did not respond to the request, nor did Jordan receive his requested diet.

On July 13, 2021, Jordan submitted an emergency grievance to Warden Brookhart about his request for a vegetarian kosher diet. Brookhart deemed the grievance not an emergency and Jordan submitted the grievance through the non-emergency process (*Id*. at p. 6). Jordan explained how his beliefs required a vegetarian kosher diet and that the diet would cost no extra funds for the prison. Brookhart and Vaughn continued to refuse Jordan's request for a vegetarian kosher diet (*Id*. at p. 7).

From March 5, 2022 until June 3, 2022, Jordan was placed in the Restrictive Housing Unit ("RHU"). He requested a vegetarian kosher diet from staff in the unit but staff refused to accommodate his requests (*Id*. at p. 7). He again submitted an emergency grievance to Brookhart, but he continued to receive non-vegetarian kosher diet trays (*Id*.). Jordan refused the trays which did not meet his desired diet (*Id*.). From March 5, 2022 until April 11, 2022, he ate only fifteen whole fruits served to all individuals at mealtimes. As a result, he lost approximately twenty pounds and suffered from numerous ailments (*Id*. at p. 9). On March 22, 2022, he spoke to Chaplain Lambert-Goheen from Shawnee Correctional Center who stated she would look into his request for a vegetarian kosher diet (*Id*. at pp. 7-8). Later that day, Jordan again received religious diet forms which he filled out and requested a vegetarian kosher diet (*Id*. at p. 8). On April 11, 2022, Lambert-Goheen again made rounds at Lawrence and he informed her that his diet was still not approved (*Id*.). Lambert-Goheen informed Jordan that he should have been approved for the diet and she would investigate the issue. After speaking with Lambert-Goheen, the assistant warden of programs,

Jeremiah Brown, visited Jordan and informed him that there were no vegetarian kosher diets at the prison, only regular kosher diets (*Id*.).

Jordan explained to Brown that the cold diet trays, which are served separately from the meat entrée, would qualify as a vegetarian kosher diet and that he was willing to accept an extra cold diet tray in place of a kosher entrée (*Id*.). Brown directed Jordan to inform Lambert-Goheen of his request. Lambert-Goheen later informed Jordan that he was approved for a vegetarian kosher diet but there were no such diets at the prison (*Id*.). Jordan again stated his desire to have two cold diet trays in place of a kosher entrée and Lambert-Goheen informed Jordan that his request would be accommodated (*Id*.). She also informed Jordan that she would speak with the dietary manager and the wardens to get his request set up.

But starting on April 11, 2022, Jordan began receiving kosher entrees and cold diet trays, which is the regular kosher diet. He did receive what he identifies as "My Own Kosher Meal" which were sealed entrees with meat or poultry, mixed with the other entrée meal (*Id*.). He also received a separate Styrofoam diet tray with lettuce, vegetables, dressing, and canned fruit (*Id*. at p. 10). Although Jordan was supposed to receive an extra Styrofoam cold tray in place of his entrée, he never received the requested vegetarian kosher cold tray (*Id*.). For each meal, he would explain to officers that he received the wrong tray, but the officers refused to return to the kitchen to fix the mistake (*Id*.).

On May 17, 2022, Jordan again spoke with Lambert-Goheen about the continued issues with his meal. Lambert-Goheen again stated she would speak to the dietary

manager and the wardens (*Id*.). That same day, he received a religious diet form marked vegan with instructions to complete the form and send it back in order to correct the issues with his diet (*Id*. at p. 10). But Jordan refused to complete the form because vegan diets are not kosher and did not meet his religious requirements (*Id*.). From May 17 -19, 2022, he received vegan diet meals which he refused (*Id*.). From May 20, 2022 until April 26, 2023, he received vegan trays in addition to his regular kosher and Styrofoam kosher diet trays (*Id*. at p. 11). On May 23, 2022, he submitted another grievance addressed to Brookhart, Brown, and dietary manager Jermy Kohn informing them of his need for a vegetarian kosher diet. He explained that he was now approved for the diet but that neither the vegan diet tray nor the kosher entrée satisfied the requirements of his religion (*Id*.). One particular issue with the trays were the canned fruit, which Jordan contends were served with ninety percent of all meals (*Id*.). Although canned fruit can be used in emergencies, Jordan's religion requires fruits and vegetables to be served whole if possible (*Id*.). But Jordan only received whole fruits and vegetables when such items were served to the entire prison population. He also received skim milk which was not considered vegetarian kosher (*Id*.). And on numerous occasions he received oatmeal, grits, pancakes, waffles, French toast, eggs, and bread which he did not believe to be kosher or cooked in a kosher kitchen (*Id*.). Thus, from January 2021 until April 26, 2023, Jordan did not receive the wholesome and nutritional diet that his religion requires (*Id*. at p. 12). He also did not receive juice while in the Restrictive Housing Unit which also caused nutritional loss (*Id*.). Jordan believes that as a result of the denial of his religious diet, he lost 39 to 49 pounds (*Id*.). Jordan was also required to either

5

purchase additional kosher foods from the prison commissary or non-kosher items that he then traded for vegetarian kosher items (*Id.*). When he ran out of funds, he was unable to eat wholesome and nutritional meals and went without meals (*Id.* at p. 13).

Jordan alleges that Brookhart, Brown, Vaughn, and Kohn treated him differently than they treated other inmates with specific religious diet requests (*Id.* at p. 14). Jordan alleges that Muslims received hallah diets, Jews and Christians received kosher diets, and Buddhists received vegan diets. But defendants failed to accommodate his religious diet requests (*Id.* at p. 14).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following enumerated counts:

**Count 1:** **Defendants denied Jordan access to a vegetarian kosher diet in violation of the Free Exercise Clause of the First Amendment.**

**Count 2:** **Defendants denied Jordan access to a vegetarian kosher diet in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq*.**

**Count 3:** **Defendants denied Jordan equal protection of the law guaranteed by the Fourteenth Amendment when they denied him access to a vegetarian kosher diet.**

**Count 4:** **Defendants Brookhart, Brown, and Kohn violated Jordan's Eighth Amendment rights when they acted with deliberate indifference to Jordan's weight-loss and other health problems caused by the lack of an adequately nutritious vegetarian kosher diet.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim**

that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

**Count 1**

The First Amendment's Free Exercise Clause prohibits prison officials from imposing a substantial burden on the free exercise of religion, unless the burden is reasonably related to a legitimate penological interest. *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). Here, Jordan alleges that Defendants hindered his ability to practice his specific religion because he was not provided with a vegetarian kosher diet. He specifically alleges that he spoke to Chaplain David Vaughn and Warden Jeremiah Brown about his need for a vegetarian kosher diet. He further alleges that he spoke to Chaplain Lambert-Goheen who stated that she would refer his request to the dietary manager and wardens (Doc. 1, pp. 9-10). At the time Jordan's claims arose, Brookhart was the warden at Lawrence and Jermy Kohn was the dietary manager. Thus, Jordan adequately states a claim in Count 1 against Vaughn, Brown, Brookhart, and Kohn.

**Count 2**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It offers broad protection to

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

institutionalized persons by prohibiting substantial burdens on their religious exercise. § 2000cc-3(g). This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). Although Jordan also states a claim under RLUIPA, the relief available under RLUIPA is injunctive. *Grayson*, 666 F.3d at 451. Nor does RLUIPA permit a cause of action against state employees; it permits relief only against "governmental bodies that receive funds and accept the conditions attached by the statute." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Jordan is no longer housed at Lawrence, but it is not clear whether he receives his requested vegetarian kosher diet now that he is housed at Pinckneyville. Thus, the Court will allow Jordan to proceed on his RLUIPA claim at this stage. The Court also **ADDS** Latoya Hughes, in her official capacity as the director of IDOC, as the proper defendant for Jordan's claim pursuant to RLUIPA. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). To the extent Jordan raises a claim against the defendants in their individual capacities, those claims are **DISMISSED**.

**Count 3**

Jordan's equal protection claim in Count 3 appears to be duplicative of his First Amendment claim because he alleges that he was denied a vegetarian kosher diet based on his religion. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional

8

labels"). To the extent he seeks to raise a separate equal protection claim, to state such a claim, a plaintiff must establish that a state actor treated him differently because of his membership in a particular class and that the state actor did so purposefully. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Discriminatory purpose "implies that the decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (citation omitted).

Jordan alleges that he was treated differently than Jewish inmates who received kosher diets and Muslim inmates who received hallah diets. But Jordan fails to allege that he was similarly situated to the other inmates, because the inmates identified practiced different religions and sought different diets from the diet sought by Jordan. *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2009) ("To be similarly situated, comparators must be 'prima facie identical in all relevant respects.'"). Jordan also fails to allege that he was treated differently because of his specific religion or that defendants' decisions were purposefully discriminatory. Instead, the facts alleged by Jordan make clear that the prison did not offer the vegetarian kosher diet for any religion. Thus, Jordan fails to state an equal protection claim.

**Count 4**

Jordan also fails to state a claim for deliberate indifference in Count 4. Jordan alleges that the denial of his requested diet caused him to go without a whole and nutritious diet, leading to substantial weight loss and a number of medical issues. He

9

attributes a number of medical issues to his lack of his requested diet including: weight loss, high blood pressure, kidney pain, stomach pain, painful bowel movements, headaches, diarrhea, constipation, loss of sleep, nausea, fatigue, depression, anxiety, stress, altered mental state, out of range creatinine, white blood count, and INR levels, sore throat, enlarged lymph nodes, body pain, and mental anguish (*Id*. at p. 14).

In order to state a claim for deliberate indifference, an inmate must put forward facts implicating both an objective and subjective element, namely that: (1) an objectively serious medical need was deprived, and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)).

But there are simply no allegations to suggest that Brookhart, Brown, Vaughn, or Kohn were aware that Jordan's lack of his preferred diet caused him any medical issues. Although Jordan states that he wrote grievances about his lack of a wholesome and nutritious diet as part of his religion, there are no facts to suggest that any defendant was aware of his weight loss or that the lack of the diet would lead to the litany of medical problems which Jordan lists as a consequence of his limited diet. There are simply no facts to suggest that they acted with deliberate indifference to his nutritional needs. Thus, Count 3 is **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Deanna Brookhart, Jeremiah Brown, David Vaughn, and Jermy Kohn. Count 2 shall proceed against Latoya

Hughes, in her official capacity only. All other claims are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Deanna Brookhart, Jeremiah Brown, David Vaughn, and Jermy Kohn: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

11

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 12/13/2023**

*/s/ Reona J. Daly*
**REONA J. DALY**
**United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**